■ In the Matter of SALVATORE J. ROMEO, Petitioner, v UNION FREE SCHOOL DISTRICT, No. 3, TOWN OF ISLIP, Respondent. (Proceeding No. 1.) In the Matter of SALVATORE J. ROMEO, Appellant, v UNION FREE SCHOOL DISTRICT, No. 3, TOWN OF ISLIP, Respondent. (Proceeding No. 2.)—(1) Proceeding pursuant to CPLR article 78 to review a determination of the respondent school district, dated June 22, 1976, which, after a hearing, (a) found the petitioner guilty of certain charges filed against him and (b) dismissed him from his position as superintendent of buildings and grounds (Proceeding No. 1); and (2) appeal by petitioner from so much of a judgment of the Supreme Court, Suffolk County, entered October 27, 1976, as, in a second article 78 proceeding, limited his recovery of back pay from March 1, 1975 to and including May 29, 1975 (Proceeding No. 2). Petition in Proceeding No. 1 granted to the extent that the determination is annulled, on the law, without costs or disbursements, and the matter is remitted to the respondent for a new hearing before a different hearing officer. Judgment in Proceeding No. 2 reversed insofar as appealed from, on the law, without costs or disbursements, and proceeding remanded to Special Term for a hearing to determine whether petitioner is entitled to an award of back pay for any period after May 29, 1975. This hearing shall be held after the conclusion of the hearing to be held on the charges of incompetence and misconduct. Petitioner was employed by the respondent school district as its superintendent of buildings and grounds. In December, 1974 respondent notified petitioner that, pursuant to section 75 of the Civil Service Law, certain charges of misconduct and incompetency were being brought against him. He was suspended without pay, effective February 1, 1975. On February 25, 1975 respondent dismissed petitioner, after finding him guilty of the charges preferred. However, this determination was annulled by judgment of the Special Term, dated May 29, 1975, upon the ground that respondent had held a hearing on the charges on a Saturday, despite the request of petitioner's attorney to reschedule it for some other day of the week because the attorney observed the Sabbath on Saturday. Respondent was ordered not to hold future hearings on a Friday evening or a Saturday (Matter of Romeo v Union Free School Dist. No. 3, Town of Islip, 82 Misc 2d 336). A second judgment of the Special Term reached the same result, and ordered a new hearing in accordance with the determination of Mr. Justice McCarthy (Matter of Romeo v Union Free School Dist. No. 3, Town of Islip, Supreme Ct, Suffolk County, June 30, 1975, De Luca, J.). Thereafter, respondent notified petitioner that, in accordance with the judgments of the Special Term, a new hearing would be held on the same charges, with the hearing to commence on December 8, 1975. At the opening of the hearing, counsel for respondent noted that the board of education of the respondent school district had appointed one Frank Johnston to act as hearing officer, but that after objections to this choice by the petitioner, through his attorney, Johnston had requested that he be relieved, which request had been granted by the board. The hearing was then adjourned for selection of a new hearing officer. The hearing reconvened on December 17, 1975 and was presided over by one Harold L. Krainin. At that time, counsel for respondent noted for the record that counsel for petitioner had made no objection to Krainin's appointment as hearing officer, and counsel for petitioner indicated that he had, in fact, no objection. The hearing continued for a period of several months. On June 22, 1976 respondent reached the determination now before this court for review, which dismissed the petitioner from his employment.

Thereafter, petitioner moved in this court to vacate his dismissal, *inter alia,* "because of the failure and neglect of the Respondent and the Hearing Officer to reveal the professional, family or friendship relationship existing between the Hearing Officer and the late Lee W. Phillips, Director of Administration of the Respondent School District." This relationship was unknown to petitioner at the time of the hearing officer's appointment. Petitioner alleged that he learned that Phillips had played a primary role in the preparation of the school district's case against him. As an alternative to vacating his dismissal, petitioner requested that the issues raised by his motion be referred to Special Term. This court referred the issues raised to Special Term which was to hold a hearing and report concerning the relationship existing between the hearing officer and Phillips. Pending the report the remainder of the petitioner's motion was held in abeyance. Special Term held a hearing and then reported back to this court. The report contained the following 18 findings of fact: "1. That, at the time of the hearing, Carol Krainin, the wife of the hearing officer Harold L. Krainin, had known Janice Phillips, the wife of the late Lee W. Phillips, for twenty-eight years. 2. They were roommates together in college. 3. Janice Phillips attended Carol's wedding, twenty-seven years ago (1950). 4. Janice and Lee W. Phillips were married in 1952, and, although the Krainins did not attend the wedding, they did attend the wedding reception. 5. Since 1952, the Krainins and the Phillips couples saw one another socially from one to three times a year, usually at one another's home or at the home of mutual friends. There was a continual social relationship existing between them during that time. 6. The Krainins attended the Bar Mitzvah of Richard Phillips, the son of Mr. and Mrs. Phillips, in 1970 or 1971. 7. In 1970 Mrs. Krainin was a witness to the Will of the late Lee W. Phillips, a Will that had been prepared by Mr. Krainin, her husband. 8. In August, 1974, Lee W. Phillips resigned his tenured position as a junior high school principal in respondent school district and was appointed to the non-tenured position of a school administrator. Mr. Krainin had knowledge of this. 9. Both Mr. Phillips and his wife were present at a surprise party that was given by the children of Mr. and Mrs. Krainin in celebration of their twenty-fifth wedding anniversary. 10. Harold Krainin was the attorney representing Lee W. Phillips when he purchased a home in 1956. 11. Harold Krainin prepared and supervised the execution of the Last Will and Testament of the late Lee W. Phillips. 12. In 1969, Lee W. Phillips consulted Harold L. Krainin in a contract matter between the district and the school administrators' association, of which Lee W. Phillips was president. Mr. Krainin's fee on this occasion was paid by the association. 13. In December, 1975, Lee W. Phillips attempted to contact Mr. Krainin about a new matter for the school. Mr. Flis, the school attorney, and attorney for the respondent school district herein, later discussed with Mr. Krainin the matter of the latter's appointment as a hearing officer. 14. There were twenty-five hearings held before the school board in the instant matter, commencing in December, 1975 and continuing until April, 1976. 15. Mr. Bennett Hirsch, the Superintendent of Schools appeared at those hearings as representative of respondent school district, assisted by the late Lee W. Phillips, and the minutes of the hearings so indicate. Mr. Phillips was present at most of those hearings. 16. Lee W. Phillips died in or about September, 1976, and Mr. and Mrs. Krainin attended his funeral. 17. While the hearings were in progress, the two families did not see one another. 18. The record does not indicate that Mr. Krainin ever divulged to respondent school board, or to its attorney, his social relationship and his attorney-client relationship with the

late Lee W. Phillips, over the years." After receipt of the report this court denied petitioner's motion insofar as it requested summary relief but granted leave to renew this argument as a separate point in the instant article 78 proceeding (No. 1). Upon consideration of this issue, we find that the hearing officer's failure to disclose his long personal and business relationship with the late Lee W. Phillips requires that petitioner be accorded a new hearing before another hearing officer. Fundamental fairness requires that prior to undertaking his duties a hearing officer make known any relationship which he may have with any party to the proceeding, and disclose all facts known to him which might indicate any interest or create even the appearance of partiality or bias (cf. *Matter of Stevens & Co. [Rytex Corp.]*, 34 NY2d 123; *Matter of Siegel v Lewis*, 50 AD2d 858). With reference to the appeal from the judgment, we agree with Special Term that petitioner is entitled to back pay for the period from March 1, 1975 through May 29, 1975, less wages earned from other employment, etc. (see Civil Service Law, § 75, subd 3; *Matter of Yeampierre v Gutman*, 52 AD2d 608; *Matter of Maurer v Cappelli*, 42 AD2d 758). The doctrine of laches was invoked in this case with respect to the period after May 29, 1975 solely because (1) petitioner failed to demand his reinstatement after respondent's determination to discharge him as of February 25, 1975 was annulled by Special Term and (2) he waited until May, 1976 to commence the instant proceeding to recover back pay. We do not believe that the doctrine was properly invoked. The record reveals that the matter of petitioner's dismissal was again before Special Term during June, 1975; that a further order annulling respondent's determination and directing that a new hearing be held was entered on July 9, 1975; that a notice of appeal from the afore-mentioned order was filed by the respondent shortly thereafter, but the appeal was never perfected; that settlement negotiations were thereafter commenced and abandoned; that respondent scheduled petitioner's second hearing (as ordered by Special Term) to commence during December, 1975; that said hearing was not completed until April 29, 1976; and that a final determination with respect thereto had not been rendered as of the date of commencement of the instant proceeding on or about May 11, 1976. Notably, the relief requested herein did not seek reinstatement (as the disciplinary charges were still pending before the hearing officer), but sought only "back wages from March 1, 1975 to date of the [as yet unmade] final determination of the charges against him." The cases cited by Special Term in support of its determination are distinguishable on their facts and do not require a contrary result (cf. *Austin v Board of Higher Educ.*, 5 NY2d 430; *Matter of Kennedy v McGinnis*, 45 AD2d 786). What is not at all clear on the present record, however, is to what extent petitioner may have contributed to the delay after May 29, 1975 in the disposition of these charges (cf. *Gerber v New York City Housing Auth.*, 53 AD2d 557, affd 42 NY2d 162), and whether petitioner may have refused a lawful request by respondent that he return to work on a temporary basis pending the conclusion of the further hearing to be held on the charges leveled against him. A hearing is required as to these issues. Mollen, P. J., Gulotta, Shapiro and O'Connor, JJ., concur.